To: Page 3 of 24　　　2012-10-05 20:32:02 (GMT)　　　From: Benjamin M. Lopatin, Esq.

Case3:12-cv-05185-JSW   Document1-1   Filed10/05/12   Page1 of 20



Benjamin M. Lopatin, Esq.
Cal. Bar No.: 281730
lopatin@hwrlawoffice.com
**THE LAW OFFICES OF
HOWARD W. RUBINSTEIN, P.A.**
One Embarcadero Center, Suite 500
San Francisco, CA 94111
(800) 436-6437
(415) 692-6607 (fax)

*Attorney for Plaintiff Ryan Barnes
and the Proposed Class*

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

C 12  5185

| | |
|---|---|
| RYAN BARNES, as an individual, and on behalf of all others similarly situated, | : Civil No.: **ORIGINAL EDL** |
| | : **CLASS ACTION COMPLAINT FOR:** |
| Plaintiff, | : 1. Violations of Cal. Bus. & Prof. C. §§ 17200, |
| | : *et seq.* |
| vs. | : 2. Violations of Cal. Bus. & Prof. C. §§ 17500, |
| | : *et seq.* |
| CAMPBELL SOUP CO. a New Jersey corporation. | : 3. Violations of Cal. Civ. C. §§ 1750, *et seq.* |
| | : |
| | : *California Class Representation* |
| Defendant. | : |
| | : *Jury Trial Requested* |

Plaintiff, RYAN BARNES, by and through his undersigned counsel, hereby files this Class Action Complaint, individually, and on behalf of all others similarly situated—and makes these allegations based on information and belief and/or which are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery against Defendant, CAMPBELL SOUP CO. ("CAMPBELL" or "Defendant"), as follows:

## I. INTRODUCTION

1. Defendant has represented that some of its products are "100% Natural," when in fact, they are not, because they contain Genetically Modified Organisms ("GMOs") in the form of soy, corn, soy derivatives, and or corn derivatives.

2. GMOs are plants that grow from seeds in which DNA splicing has been used to place genes from another source into a plant.

3. Defendant mistakenly represents that its Campbell's 100% Natural Southwest-Style White Chicken Chili and its Campbell's 100% Natural *Healthy Request*® Mexican-Style Chicken Tortilla Soup (collectively, "the Products") are "100% Natural," even though they contain GMOs, in the form of corn and/or corn derivatives. *See* **Exhibit 1**, attached hereto and incorporated herein. *Scanned Copy of Labeling for Defendant's 100% Natural Southwest-Style White Chicken Chili*.

4. The Products are not "100% Natural" because genetically modified corn products contain genes and or DNA that would not normally be in them, and are thus not natural.

5. Defendant manufactures, markets, advertises, distributes and sells the Products in supermarkets located throughout California and in this Judicial District.

6. Defendant markets the Products as "100% natural," specifically on the front labeling or packaging for the Products. Contrary to Defendant's representations, however, the Products use plants or plant derivatives grown from GMOs.

7. Plaintiff contends that the Products containing GMOs are not "100% Natural" and that Defendant's advertising and labeling is deceptive and likely to mislead the public as a result.

8. Plaintiff purchased the Products because he believed the Products were "100% Natural," based on his reliance upon Campbell's material statement that the Products were "100% Natural" on the front labeling of the Products.

9. Defendant's "100% Natural" statements on the Products are false, misleading, and likely to deceive reasonable consumers, such as Plaintiff and members of the Class (defined below), because the Products contain GMOs, and are thus, not "100% Natural."

10. Plaintiff would not have purchased the Products if he had known that the Defendant's Products are not "100% Natural" because they contain GMOs.

## II. VENUE AND JURISDICTION

11. This Court has jurisdiction over the subject matter presented by this Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the plaintiff class is a citizen of a state different from any Defendant, and in which the matter in controversy exceeds in the aggregate the sum of $5,000,000.00, exclusive of interest and costs.

12. Plaintiff alleges that the total claims of the individual members of the Plaintiff Class in this action are in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. § 1332(d)(2), (5).

13. As set forth below, Plaintiff is a citizen of California, and CAMPBELL can be considered a citizen of New Jersey. Therefore, diversity of citizenship exists under CAFA, as required by 28 U.S.C. § 1332(d)(2)(A).

14. Furthermore, Plaintiff alleges on information and belief that more than two-thirds of all of the members of the proposed Plaintiff Class in the aggregate are citizens of a state other

than California, where this action is originally being filed, and that the total number of members of the proposed Plaintiff Class is greater than 100, pursuant to 28 U.S.C. § 1332(d)(5)(B).

15. Venue in this judicial district is proper pursuant to 28 U.S.C. §1391(a) because, as set forth below, Defendant conducts business in, and may be found in, this district, and Plaintiff purchased the subject Products of this action in this judicial district.

16. The "Declaration of Benjamin M. Lopatin, Esq., Pursuant to Civil Code §1780(c) of the Consumer Legal Remedies Act, Civil Code §§1750 et seq." regarding venue under the California Consumer Legal Remedies Act ("CLRA") is submitted herewith and is incorporated herein by reference.

## III. PARTIES

17. Plaintiff is an individual more than 18 years old, and is a citizen of California, who resides in the city and County of San Francisco. He respectfully requests a jury trial on damage claims.

18. Plaintiff purchased the Products because he believed the Products were 100% Natural, based on his reliance upon Campbell's material statement that the Products were 100% Natural on the front labeling of the Products. For instance, during July of 2012, Plaintiff purchased Campbell's 100% Natural Southwest-Style White Chicken Chili and Campbell's 100% Natural *Healthy Request*® Mexican-Style Chicken Tortilla Soup from a Safeway Supermarket located at 2350 Noriega Street, San Francisco, California.

19. In purchasing the Products, Plaintiff saw and relied on the labeling and advertising for it displayed on the packaging. He has been damaged by his purchase of the Products because the labeling and advertising for the Products was and is false and/or

misleading under California law; therefore, the Products are worth less than what Plaintiff paid for them and/or Plaintiff did not receive what he reasonably intended to receive.

20. The labeling and advertising for the Products relied upon by Plaintiff was prepared and/or approved by CAMPBELL and its agents, and was disseminated by CAMPBELL and its agents through labeling and advertising containing the misrepresentations alleged herein. The labeling and advertising for the Products was designed to encourage consumers to purchase the Products and reasonably misled the reasonable consumer, i.e. Plaintiff and the Class.

21. CAMPBELL is a corporation organized and existing under the laws of the state of New Jersey. CAMPBELL maintains a principal place of business at 1 Campbell Place, Camden, New Jersey 08103-1799, and a registered agent for service of process in California as: CT Corporation System, 818 West Seventh Street, Los Angeles, California 90017. Directly and through its retailers, distributors, and agents, CAMPBELL has substantial contacts with, and receives benefits and income from and through, the State of California.

22. CAMPBELL is the owner, manufacturer and distributor of the Products, and is the company that created and/or authorized the false, misleading and deceptive labeling and advertising for the Products.

23. Plaintiff alleges that, at all times relevant herein, CAMPBELL and its subsidiaries, affiliates, and other related entities, as well as their respective employees, were the agents, servants and employees of CAMPBELL, and at all times relevant herein, each was acting within the purpose and scope of that agency and employment. Plaintiff further alleges on information and belief that at all times relevant herein, the distributors and retailers who delivered and sold the Products, as well as their respective employees, also were CAMPBELL's

agents, servants and employees, and at all times herein, each was acting within the purpose and scope of that agency and employment.

24. Additionally, Plaintiff alleges that, in committing the wrongful acts alleged herein, CAMPBELL, in concert with its subsidiaries, affiliates, and/or other related entities and their respective employees, planned, participated in and furthered a common scheme to induce members of the public to purchase the Products by means of false, misleading, deceptive and fraudulent representations, and that CAMPBELL participated in the making of such representations in that it disseminated those misrepresentations and/or caused them to be disseminated. Whenever reference in this Complaint is made to any act by CAMPBELL, or its subsidiaries, affiliates, distributors, retailers and other related entities, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents, and/or representatives of CAMPBELL committed, knew of, performed, authorized, ratified and/or directed that act or transaction on behalf of CAMPBELL while actively engaged in the scope of their duties.

### IV. FACTUAL ALLEGATIONS

25. CAMPBELL manufacturers, distributes, markets, advertises, and sells the Products, Campbell's 100% Natural Southwest-Style White Chicken Chili and its Campbell's 100% Natural *Healthy Request®* Mexican-Style Chicken Tortilla Soup, which are misrepresented to be "100% Natural." *See* **Exhibit 1**, attached hereto and incorporated herein. *Scanned Copy of Labeling for Defendant's 100% Natural Southwest-Style White Chicken Chili.*

26. Defendant's "100% Natural" statements on the Products are false, misleading, and likely to deceive reasonable consumers, such as Plaintiff and members of the Class (defined below), because the Products contain GMOs, and are thus, not "100% Natural."

27. Genetically modified corn or soy products contain genes and/or DNA that would not normally be in them, and are thus, not natural.

28. As a result, through a variety of advertising, including but not limited to the packaging and labeling of the Products, CAMPBELL has made false and misleading statements and representations regarding the Products.

29. Defendant, on its website, *http://www.campbellsoup.com/Products/100Natural*, makes the following statements in regards to the Products:

1) "100% naturally delicious;"

2) "100% Natural now has 37 delicious varieties that contain only 100% natural ingredients—like roasted natural white meat chicken, farm-grown vegetables and flavorful herbs and spices." and

3) "It's only natural to want something new. Explore our newest, 100% Natural varieties and find a fresh favorite today!"

30. These statements are misleading because all 37 varieties are not "100% Natural" because some of the 37 varieties contain GMOs, specifically in the form of soy, corn, soy derivatives, and/or corn derivatives.

31. In addition, on the Products' front packaging and/or labeling, Defendant falsely states that the Products are "100% Natural," although they are not.

32. Defendant's claim is misleading to reasonable consumers and has a significant likelihood of misleading consumers into believing the Products are "100% Natural," when they are not.

33. Plaintiff contends that Defendant's labeling of the Products as "100% Natural," when they contain GMOs, amounts to a material misrepresentation.

34. Plaintiff would not have purchased the Products had he known they were not "100% Natural."

35. Plaintiff and members of the Class relied on the Products being "100% Natural," as that statement was prominently displayed on the front labeling or packaging for the Products.

36. Plaintiff and members of the Class have been economically damaged by their purchase of the Products because they are not "100% Natural."

37. At a minimum, Plaintiff contends that Defendant should cease labeling the Products "100% Natural."

38. Plaintiff therefore brings this class action to secure, among other things, equitable relief and actual damages, statutory damages, and punitive damages for the Class against CAMPBELL for false and misleading advertising in violation of California's Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200 *et seq.*; California's False Advertising Law ("FAL"), Bus. & Prof. Code §§ 17500 *et seq.*; California's and Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*

## V. CLASS ACTION ALLEGATIONS

43. Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

44. Pursuant to Cal. Civ. Code §1781, Cal. Code of Civil Procedure §382 and Federal Rule of Civil Procedure 23, Plaintiff brings this class action and seeks certification of the claims and certain issues in this action on behalf of a Class defined as:

> **all California persons who have purchased Campbell's 100% Natural Soups containing corn or soy ingredients, for personal use, during the period extending from October 5, 2008, through and to the filing date of this Complaint.**

45. Plaintiff reserves the right to amend the Class definition if further investigation and discovery indicates that the Class definition should be narrowed, expanded, or otherwise modified. Excluded from the Class are governmental entities, Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

46. Defendant's practices and omissions were applied uniformly to all members of the Class, including any subclass arising out of the California statutory claims alleged herein, so that the questions of law and fact are common to all members of the Class and any subclass.

47. All members of the Class and any subclass were and are similarly affected by the deceptive labeling of the Products, and the relief sought herein is for the benefit of Plaintiff and members of the Class and any subclass.

48. Based on the annual sales of the Products and the popularity of the Products, it is apparent that the number of consumers in both the Class and any subclass is so large as to make joinder impractical, if not impossible.

49. Questions of law and fact common to the Plaintiff Class and any subclass exist that predominate over questions affecting only individual members, including, inter alia:

 a. Whether Defendant's practices and representations related to the marketing, labeling and sales of the Products in California were unfair, deceptive and or unlawful in any respect, thereby violating Cal. Bus. & Prof. Code §§ 17200 *et seq.*;

    b. Whether Defendant's practices and representations related to the marketing, labeling and sales of the Products in California were unfair, deceptive and or unlawful in any respect, thereby violating Cal. Bus. & Prof. Code §§ 17500 *et seq.*;

    c. Whether Defendant's practices and representations related to the marketing, labeling and sales of the Products in California were unfair, deceptive and or unlawful in any respect, thereby violating Cal. Civil Code §§ 1750 *et seq.*; and

    d. Whether Defendant's conduct as set forth above injured consumers and if so, the extent of the injury.

50. The claims asserted by Plaintiff in this action are typical of the claims of the members of the Plaintiff Class and any subclass, as the claims arise from the same course of conduct by Defendant, and the relief sought within the Class and any subclass is common to the members of each.

51. Plaintiff will fairly and adequately represent and protect the interests of the members of the Plaintiff Class and any subclass.

52. Plaintiff has retained counsel competent and experienced in both consumer protection and class action litigation.

53. Certification of this class action is appropriate under Cal. Civ. Code §1781, Cal. Code of Civil Procedure §382 and Federal Rule of Civil Procedure 23 because the questions of law or fact common to the respective members of the Class and any subclass predominate over questions of law or fact affecting only individual members.

54. This predominance makes class litigation superior to any other method available for the fair and efficient adjudication of these claims.

55. Absent a class action, it would be highly unlikely that the representative Plaintiff or any other members of the Class or any subclass would be able to protect their own interests because the cost of litigation through individual lawsuits might exceed expected recovery.

56. Certification also is appropriate because Defendant acted, or refused to act, on grounds generally applicable to both the Class and any subclass, thereby making appropriate the relief sought on behalf of the Class and any subclass as respective wholes.

57. Further, given the large number of consumers of the Products, allowing individual actions to proceed in lieu of a class action would run the risk of yielding inconsistent and conflicting adjudications.

58. A class action is a fair and appropriate method for the adjudication of the controversy, in that it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense and burden on the courts that individual actions would engender.

59. The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, outweigh any difficulties that might be argued with regard to the management of this class action.

## VI. FIRST CAUSE OF ACTION:
## VIOLATIONS OF CAL. BUS & PROF. CODE §§ 17200 *ET SEQ.*

60. Plaintiff re-alleges and incorporates by reference the allegations set forth in the each of the preceding paragraphs of this Complaint.

61. This cause of action is brought on behalf of Plaintiff and members of the general public pursuant to Cal. Bus. & Prof. Code §§ 17200 *et seq.*, which provides that "unfair competition shall mean and include any unlawful, unfair or deceptive business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) as Part 3 of Division 7 of the Business and Professions Code.

62. Defendant has violated the Act by engaging in the unfair and deceptive practices described above, which offend public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers. Specifically, Defendant has represented that the Products are "100% Natural," when in fact, they are not, because they contains GMOs.

63. Plaintiff alleges that Defendant committed unfair business acts and or practices, as set forth in detail above. The utility of Defendant's practices related to the deceptive labeling and advertising of the Products is negligible, if any, when weighed against the harm to the general public.

64. The harmful impact upon members of the general public who purchased and used the Products outweighs any reasons or justifications by Defendant for the deceptive labeling and advertising practices employed to sell the Products that misleadingly claim to be "100% Natural."

65. Defendant had an improper motive (profit before accurate marketing) in its practices related to the deceptive labeling and advertising of the Products, as set forth above.

66. The use of such unfair business acts and practices was and is under the sole control of Defendant, and was deceptively hidden from members of the general public in Defendant's marketing, advertising and labeling of the Products.

67. Defendant committed a deceptive act or practice by making the labeling and advertising representations set forth in detail above. These deceptive acts and practices had a capacity, tendency, and/or were likely to deceive or confuse reasonable consumers.

68. Defendant also committed an unlawful business practice by violating the FAL and CLRA as set forth in detail below. These violations serve as predicate violations of this prong of the UCL.

69. As a purchaser and consumer of Defendant's Products, and as a member of the general public in California who purchased and used the Products, Plaintiff is entitled to and does bring this class action seeking all available remedies under the UCL.

70. Defendant's labeling and advertising practices, as set forth above, were intended to promote the sale of the Products and constitute unfair, deceptive and/or unlawful business practices within the meaning of California Bus. & Prof. Code § 17200 *et seq.*

71. Pursuant to California Bus. & Prof. Code § 17203, Plaintiff, on behalf of himself and members of the general public, seeks an order of this Court requiring Defendant to restore to Plaintiff and other California purchasers of the Products all monies that may have been acquired by Defendant as a result of such unfair, deceptive and/or unlawful business acts or practices.

72. Plaintiff and California purchasers of the Products will be denied an effective and complete remedy in the absence of such an order.

73. As a result of Defendant's violations of the UCL, Plaintiff and California purchasers of the Products are entitled to restitution for out-of-pocket expenses and economic harm.

CLASS ACTION COMPLAINT
Page 13 of 18

To: Page 16 of 24　　2012-10-05 20:32:02 (GMT)　　From: Benjamin M. Lopatin, Esq.

Case3:12-cv-05185-JSW Document1-1 Filed10/05/12 Page14 of 20

74. Pursuant to Civil Code § 3287(a), Plaintiff and California purchasers of the Products are further entitled to pre-judgment interest as a direct and proximate result of Defendant's wrongful conduct.

75. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff and California purchasers of the Products are entitled to interest in an amount according to proof.

## VII. SECOND CAUSE OF ACTION:
## VIOLATIONS OF CAL. BUS. & PROF. CODE §§ 17500 *ET SEQ.*

76. Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

39. In violation of California Bus. & Prof. Code § 17500, Defendant disseminated, or caused to be disseminated, the deceptive Product labeling and advertising representations that misleadingly claim that the Products are "100% Natural," when in fact, they are not because they contain GMOs.

77. Defendant's Products' labeling and advertising representations are misleading because they cannot support the claims that the Products are "100% Natural."

78. Defendant's labeling and advertising representations for the Products are by their very nature unfair, deceptive and/or unlawful within the meaning of California Bus. & Prof. Code § 17500 et seq.

79. The representations were likely to deceive reasonable consumers and did deceive reasonable consumers such as Plaintiff and members of the Class.

80. In making and disseminating the deceptive representations alleged herein, Defendant knew or should have known that the representations were misleading, and acted in violation of California's Bus. & Prof. Code §§17500 *et seq.*

81. As a direct and proximate result of Defendant's wrongful conduct, Plaintiff and California purchasers of the Products have suffered substantial monetary and non-monetary damage.

82. Pursuant to Bus. & Prof. Code § 17535, Plaintiff, on behalf of himself and other California purchasers of the Products, seeks an order of this Court requiring Defendant to restore to California purchasers of the Products all monies that may have been acquired by Defendant as a result of such unfair, deceptive and/or unlawful acts or practices.

83. As a result of Defendant's violations of the FAL, Plaintiff and California purchasers of the Products are entitled to restitution for out-of-pocket expenses and economic harm.

84. Pursuant to Civil Code § 3287(a), Plaintiff and California purchasers of the Products are further entitled to pre-judgment interest as a direct and proximate result of Defendant's wrongful conduct.

85. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff and California purchasers of the Products are entitled to interest in an amount according to proof.

### VIII. THIRD CAUSE OF ACTION: FOR VIOLATIONS OF CAL. CIV. CODE § 1750 ET SEQ.

86. Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

To: Page 18 of 24　　2012-10-05 20:32:02 (GMT)　　From: Benjamin M. Lopatin, Esq.

Case3:12-cv-05185-JSW Document1-1 Filed10/05/12 Page16 of 20

87.　This cause of action is brought pursuant to Cal. Civ. Code §§ 1750 *et seq.*

88.　Plaintiff and each California purchaser of the Products are "consumers" within the meaning of Civil Code §1761(d).

89.　The purchases of the Products by Plaintiff and California purchasers of the Products were and are "transactions" within the meaning of Civil Code §1761(e).

90.　Defendant's marketing, labeling and advertising and sales of the Products within California, that misleadingly claim to be "100% Natural," violated the CLRA in at least the following respects as set forth in detail above:

    a. In violation of Civil Code §1770(a)(5), CAMPBELL represented that the Products have characteristics, ingredients, uses, and benefits which they do not have; and

    b. In violation of Civil Code §1770(a)(7), CAMPBELL represented that the Products are of a particular standard, quality, or grade, which they are not.

    c. In violation of Civil Code §1770(a)(9), CAMPBELL advertised the Products with an intent not to sell the Products as advertised;

    d. In violation of Civil Code §1770(a)(14), CAMPBELL represented that the purchase of the Products confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law; and

    e. In violation of Civil Code §1770(a)(16), CAMPBELL represented that the subject of the sale of the Products has been supplied in accordance with a previous representation when it has not.

91. Plaintiff seeks and is entitled to equitable relief in the form of an order requiring Defendant to make full restitution to California purchasers of the Products of all monies wrongfully obtained as a result of the conduct described above.

92. Plaintiff, by and through counsel, on or about August 3, 2012, notified Defendant in writing of the particular violations of Section 1770 of the CLRA, and demanded that it take certain corrective actions within the period prescribed by the CLRA for such demands.

93. However, Defendant failed to adequately respond to the demands for corrective action within the time prescribed by the CLRA.

94. Therefore, Plaintiff requests statutory and actual damages, as well as punitive damages, interest and attorneys' fees as authorized by Section 1780(a) of the CLRA.

95. In Addition, Plaintiff seeks and is entitled to, pursuant to Section 1780(a)(2) of the CLRA, an order for the equitable relief described above, as well as costs, attorney's fees and any other relief which the Court deems proper.

## IX. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually, and on behalf of all others similarly situated, prays for relief pursuant to each cause of action set forth in this Complaint as follows:

1. For an order certifying that the action may be maintained as a class action, certifying Plaintiff as representative of the Class, and designating his attorneys Class counsel.

2. For an award of equitable relief as follows:

   (a) Enjoining Defendant from making any claims for the Products found to violate the UCL, FAL, or CLRA as set forth above;

   (b) Requiring Defendant to make full restitution of all monies wrongfully obtained as a result of the conduct described in this Complaint; and

(c)   Requiring Defendant to disgorge all ill-gotten gains flowing from the conduct described in this Complaint.

3.   For an award of attorney's fees pursuant to, *inter alia*, §1780(d) of the CLRA and Code of Civil Procedure §1021.5.

4.   For actual damages in an amount to be determined at trial;

5.   For actual, statutory, and punitive damages as may be provided for by statute for violations of the CLRA, because the demanded corrections failed to take place within the thirty (30) day notice period.

6.   For an award of costs and any other award the Court might deem appropriate;

7.   For pre- and post-judgment interest on any amounts awarded; and

8.   Providing such further relief as may be just and proper.

## X. JURY DEMAND

Plaintiff respectfully demands a trial by jury on all issues so triable.

Respectfully Submitted,

Dated: October 5, 2012

By: /s/ Benjamin M. Lopatin
Benjamin M. Lopatin, Esq.
Cal. Bar No.: 281730
lopatin@hwrlawoffice.com
THE LAW OFFICES OF
HOWARD W. RUBINSTEIN, P.A.
One Embarcadero Center, Suite 500
San Francisco, CA 94111
(800) 436-6437
(415) 692-6607 (fax)

*Attorneys for Plaintiff Ryan Barnes and the Proposed Class*

# EXHIBIT

# 1



# Campbell's
## 100% natural
### SOUTHWEST-STYLE WHITE CHICKEN CHILI

NET WT 18.6 OZ (1 LB 2.6 OZ) (527g)

PER 1 CUP
- 140 CALORIES
- 0.5g SAT FAT
- 650mg SODIUM
- 5g SUGARS

READY TO ENJOY SOUP
*No artificial ingredients and only minimally processed

**COOKED WITH CARE IN THE USA**

## Nutrition Facts
Serving Size 1 cup (240mL)
Servings Per Container about 2

| Amount Per Serving | |
|---|---|
| Calories 140 | Calories from Fat 20 |

| | % Daily Value* |
|---|---|
| Total Fat 2.5g | 4% |
| Saturated Fat 0.5g | 3% |
| Trans Fat 0g | |
| Polyunsaturated Fat 0.5g | |
| Monounsaturated Fat 1g | |
| Cholesterol 10mg | 3% |
| Sodium 650mg | 27% |
| Potassium 390mg | 11% |
| Total Carbohydrate 21g | 7% |
| Dietary Fiber 6g | 24% |
| Sugars 5g | |
| Protein 8g | |
| Vitamin A 0% · Vitamin C 2% | |
| Calcium 6% · Iron 8% | |

*Percent Daily Values are based on a 2,000 calorie diet. Your daily values may be higher or lower depending on your calorie needs.

| | Calories: | 2,000 | 2,500 |
|---|---|---|---|
| Total Fat | Less than | 65g | 80g |
| Sat Fat | Less than | 20g | 25g |
| Cholesterol | Less than | 300mg | 300mg |
| Sodium | Less than | 2,400mg | 2,400mg |
| Potassium | | 3,500mg | 3,500mg |
| Total Carbohydrate | | 300g | 375g |
| Dietary Fiber | | 25g | 30g |

For more information, please visit:
campbellsoup.com

## feel satisfied and feel good.

It's only natural to care about what you put in your body. And it's only natural to crave delicious food. That's why Campbell's® 100% Natural soups are your perfect go-to option. Enjoy each one of our naturally inspired recipes.

### DIRECTIONS / INSTRUCCIONES
🚫 DO NOT ADD WATER / NO AGREGUE AGUA

STOVE/Heat, stirring occasionally. Enjoy.

VE/MICROONDAS:
1. Covered in medium microwavable bowl on HIGH for 3 min.
2. Careful, LEAVE in microwave 1 min. Con cuidado, dejarla en el microondas...
3. STIR and enjoy. Revuelva y disfrute.

TOH: Metal edges are sharp. Las bordes metalicos son filosos.

INGREDIENTS: ...STOCK, PEA BEANS, ROASTED NATURAL WHITE MEAT PEPPERS, GREEN PEPPERS, JALAPEÑO PEPPERS, CONTAINS ...OF LOWER SODIUM NATURAL SEA SALT ONIONS, GARLIC... ...CHIPS (CORN, PEANUT OIL, SALT,... ...YELLOW TOMATO JUICE, SUGAR, SALT... ...GUAR, CARRAGEENAN, POTATO... ...LOCUST BEAN GUM, YEAST... ...CHICKEN FAT, CHICKEN BROTH,... VEAL FLAVORING, SPICE, DRIED... CONTAINS TRACES OF WHEAT

Campbell's CAMPBELL SOUP COMPANY CAMDEN NJ USA 08103-1701

case you didn't know... ...an gum, Locust Bean gum and geenan are natural ingredients ...ovide texture.

CLIP & EARN FOR YOUR SCHOOL
labelsforeducation.com

0 51000 19562 3

19562-2
9110270C930